IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AMIR A. AKBARNIA,
    Plaintiff,

vs.                                          Case No. 09-2609-JTM

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.

MEMORANDUM AND ORDER

Presently before this court is plaintiff Amir Akbarnia's petition for review of a final decision of the Commissioner of Social Security (Dkt. No. 11). For the following reasons, this court denies the appeal and affirms the decision of the Administrative Law Judge (ALJ).

I. BACKGROUND

This suit involves an application for disability benefits (DIB) under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 401 *et seq* (2000 & Supp. 2010). Akbarnia's application was denied initially and on reconsideration (Tr. 79-82, 84-98). On May 29, 2009, after a hearing, an ALJ found that Akbarnia was not under a disability, as defined by the Act (Tr. 13). The ALJ found that Akbarnia had engaged in substantial gainful activity and that he did not have a severe medically determinable impairment (Tr. 11-13). On October 16, 2009, the Appeals Council of the Social Security Administration denied Akbarnia's request for review of the ALJ's decision (Tr. 1-3).

The detailed facts of the case, which are incorporated herein, are fully set forth in the ALJ's

decision (Tr. 12-14), and the parties' briefs (Dkt. 11, at 2-13; Dkt. 16, at 2-7). Akbarnia argues that he has been disabled by Lyme disease and depression since September 30, 2003, and that he has not been able to hold gainful employment since that date. Akbarnia has a high school education and took a few college courses, both on campus and online, before his alleged disability prevented him from pursuing further education. Prior to his alleged disability, Akbarnia worked at a fast food restaurant and an ice cream shop, and he performed cashiering and sacking duties at a grocery store. Akbarnia held a full-time position as a Sprint customer service representative between from August 2005- January 2006. (Tr. 21, 38, 141, 181).

After a full analysis of the evidence, the ALJ concluded that Akbarnia did not have any medically determinable impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, at any time prior to or on September 30, 2003. (Tr. 12-14). Considering Akbarnia's alleged fatigue, the ALJ noted that numerous clinical and laboratory tests failed to identify any significant underlying impairment. (Tr. 13). A medical evaluation by Dr. George Stern showed that while Akbarnia may have had affective disorders, Dr. Stern considered any impairment to be non-severe. (Tr. 417). The ALJ gave substantial weight to lab results in which Akbarnia tested negative for Lyme Disease, as well as a reviewing physician's note that said Akbarnia did not show symptoms of the disease. (Tr. 13). The ALJ also referred to other physicians who found no medically determinable impairment. (Tr. 13).

The ALJ gave limited weight to Dr. Carol Ann Ryser's medical opinion that Akbarnia was disabled, as there was no underlying physical impairment to support that opinion. (Tr. 13). The ALJ also noted abnormalities in Akbarnia's white blood count but found that lab analyses could not conclusively demonstrate any severe underlying impairment. (Tr. 13). In considering the extent of

2

the effects of Akbarnia's "crushing fatigue," the ALJ noted that Akbarnia "hangs out with friends, drives, goes shopping," and "exercises daily." (Tr. 14). Akbarnia has taken "a variety of medications" but is currently "taking only a steroid." The ALJ found that Akbarnia could "perform a full range of physical work with no mental limitations." In conclusion, the ALJ found Akbarnia "unlimited" in his ability to work and able to perform any of his past positions as a customer service representative, fast food worker, or cashier. (Tr. 14).

The ALJ also concluded that Akbarnia had engaged in substantial gainful activity since the onset of his alleged disability. (Tr. 12). In considering this issue, the ALJ gave significant weight to Akbarnia's reported earnings while working at Sprint ($11,492 in 2005 and $4,103 in 2006). (Tr. 12). The ALJ also noted that in 2004, Akbarnia worked in exchange for medical care, which "may have also constituted substantial gainful activity." (Tr. 12). The ALJ pointed out the relative consistency of Akbarnia's symptoms throughout the alleged period of disability, which started before and continued after Akbarnia's periods of employment. (Tr. 12).

## II. LEGAL STANDARD

This court's standard of review is governed by the Social Security Act, which provides, in part, that the "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2000 & Supp. 2010). The court reviews the Commissioner's decision only to determine whether the decision was free from legal error and supported by substantial evidence. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is "such evidence that a reasonable mind might accept to support the conclusion." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). Evidence is insubstantial when it is overwhelmingly contradicted by other evidence. *Id*. The court will neither reweigh the evidence

nor substitute its judgment for that of the Commissioner's. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, the findings will not be affirmed without scrutinizing the entire record to determine if the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

An individual is under a disability only if the individual can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). The physical or mental impairment must be so severe that the individual cannot perform any of his or her past relevant work and cannot engage in other substantial gainful work existing in the national economy, considering the individuals age, education, and work experience. *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2008).

The Social Security Administration, pursuant to the Social Security Act, has established a five-step evaluation process for determining whether an individual is disabled. *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); 20 C.F.R. § 404.1520(a) (2008). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989). The first three steps require the Commissioner to determine: (1) whether the claimant has engaged in gainful activity since the disability began; (2) whether the claimant has severe physical or mental impairments; (3) whether the severity of the impairments meets or equals a specific list of impairments. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988); 20 C.F.R. § 404.1520. When the impairment does not meet or equal a listed impairment, the ALJ must "make a finding about [the claimant's] residual functional capacity based on all the

4

relevant medical and other evidence in your case record." 20 C.F.R. § 416.920(e).

After assessing the claimant's residual functional capacity, the Commissioner may move to steps four and five, which require assessing whether the claimant can perform any past relevant work and whether the individual can generally perform other work that exists in the national economy. *Williams*, 844 F.2d at 751; 20 C.F.R. § 404.1520. While the claimant bears the burden of proof in steps one through four to prove that the claimant has a disability that prevents performance of past relevant work, the Commissioner bears the burden at step five to prove that there are jobs in the national economy that the claimant can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).

III. ANALYSIS

In this case, Akbarnia argues that (1) the ALJ improperly weighed the findings and opinion of the treating physician, Dr. Carol Ryser, and (2) the ALJ erred in finding that Akbarnia had no severe impairments. The Commissioner responded, arguing that the ALJ properly found no severe impairments because Akbarnia had engaged in substantial gainful activity. Alternatively, the Commissioner argued that the ALJ properly considered the medical evidence and Akbarnia's daily activities in determining there was insufficient support to show a severe impairment existed.

On the first step of the five-step process referred to above, the ALJ concluded that Akbarnia's work from August 2005 through January 2006, constituted substantial gainful activity. Akbarnia disputes that conclusion and argues it was an "unsuccessful work attempt." The ALJ's conclusion on this issue is sufficient to deny Akbarnia's claim altogether. This court will not address the substantial gainful activity issue here, and the ALJ's conclusion on that issue renders addressing the medically determinable impairment issue unnecessary. Nevertheless, this court will consider

each of Akbarnia's arguments.

*A. The Treating Physician's Opinion*

First, Akbarnia argues that the ALJ improperly discounted Dr. Ryser's opinion. "In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ must give controlling weight to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Id*. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). If the ALJ rejects the opinion of a treating physician, he must give a "sufficient explanation" for doing so. *Id*. "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if [they] 'outweigh' the treating physician's report, not the other way around." *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988).

Specifically, Akbarnia protests the ALJ's failure to give controlling weight to Dr. Ryser's diagnosis of Lyme disease. However, the medical tests did not support Dr. Ryser's diagnosis. In October 2002, Akbarnia's first lab tests for Lyme disease were negative. (Tr. 269). In December 2003, more tests showed normal results. (Tr. 275, 279). Although one test in October 2005, was positive for a form of bacteria that may cause the disease, lab tests a month later were negative. (Tr. 379, 365). In November 2006, a state agency-reviewing physician noted that there was no medically determinable impairment for Lyme disease. (Tr. 395). Lab tests performed in October 2007, and March 2009, were both negative as well. (Tr. 537, 503-04). The results of the lab tests and physician reports from October 2002, through March 2009, were consistently negative for Lyme disease.

6

Despite the negative results of these medical tests, Dr. Ryser diagnosed Akbarnia with Lyme disease in November 2006. (Tr. 396). Furthermore, in March 2009, Dr. Ryser stated that Akbarnia suffered from two different types of Lyme disease. (Tr. 588). These diagnoses were never supported by medically acceptable clinical and laboratory diagnostic techniques, so Dr. Ryser's opinion is not entitled to controlling weight. *See Robinson*, 366 F.3d at 1082. The ALJ's explanation for disregarding Dr. Ryser's conclusions may have been brief, but it was sufficient, specifically stating that "there is no underlying physical impairment to support them." *See Robinson*, 366 F.3d at 1082. Relying on *McGoffin v. Barnhart*, Akbarnia argues that the ALJ had an obligation to recontact Dr. Ryser. 288 F.3d 1248, 1252 (10th Cir. 2002). However, *McGoffin* dealt with an ALJ's outright rejection of a medical report based on the ALJ's own subjective speculation. *See id.* Here, the ALJ's analysis concluded that Dr. Ryser's opinions found no medical support, so there was no duty to recontact the physician. As the ALJ's decision was not overwhelmingly contradicted by other evidence, this court finds that the decision was not in error.

### B. The Existence of a Medically Determinable Impairment

Akbarnia argues that the ALJ erred in finding that he had no severe impairments. Akbarnia's alleged physical or mental impairment must be so severe that he cannot perform any of his past relevant work or engage in other substantial gainful work. *See Walton*, 535 U.S. at 217-22. Akbarnia argues that his chronic fatigue syndrome and cognitive deficits combine to limit significantly his capacity to perform work-related functions. Akbarnia notes that several medical sources have documented his complaints of fatigue and cognitive dysfunction. However, the ALJ found several inconsistencies with Akbarnia's claim of a disabling impairment. Akbarnia worked forty-hour weeks as a customer service representative from August 2005, through January 2006, earning over $15,000

in that time frame. Regardless of whether this is considered substantially gainful employment, it certainly discredits Akbarnia's claim about the extent of his disability. Furthermore, Dr. Stern did not observe Akbarnia's alleged difficulties with activities of daily living, low energy, and poor concentration. The ALJ found none of the medical determinations sufficient to establish that Akbarnia's fatigue was disabling. Akbarnia's daily activities included preparing meals, doing the dishes, caring for pets, watching television, exercising, and reading books. Additionally, Akbarnia testified that he periodically enjoys attending movies with friends, driving, and going shopping. Based on these facts, the ALJ concluded that Akbarnia was capable of performing skilled sedentary work, as well as unskilled, light-exertion work, as he had previously performed in his several jobs. This conclusion negates Akbarnia's claim. *See Walton*, 535 U.S. at 217-22.

This court must uphold the ALJ's conclusion as long as it was free from legal error and supported by substantial evidence. *Fischer-Ross*, 431 F.3d at 731. The evidence cited by the ALJ substantially supports his conclusion that Akbarnia had no medically-determinable severe ailment. Other than Akbarnia's complaints, there was no substantial evidence that his conditions limited his ability to work. Therefore, this court finds no error in the ALJ's decision that Akbarnia failed to substantiate the existence of a medically determinable impairment.

IT IS ACCORDINGLY ORDERED this 21st day of March, 2011, that the present appeal is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE